The bill in the first above-stated cause was filed July 28th, 1926; that in the second the same day. Both allege the making of a mortgage for $10,000 on the same date to one Lobley, who afterwards assigned them to other parties, who, in turn, assigned them to the complainant. The defendant afterwards executed to the Chelsea National Bank, one of the defendants, second mortgages for $80,000 each. The only difference in these two mortgages is that they are secured upon different land and real estate, both, however, in the same county. As both were owned by the complainant, at the time these suits were brought they should have been consolidated into one action, as no advantage accrues to the complainant from two separate suits except the collection of two bills of costs, against which the defendant is entitled to be protected. Such proceedings were had in each of these suits *Page 367 
that final decrees were simultaneously entered in both on November 8th, 1926. Each decree is identical in language except that the one in the second suit directed payment to the Gilbert T. Harris Corporation of the principal and interest due on the second mortgage, and afterwards payment of the same mortgage to its rightful owner, the Chelsea National Bank. This being discovered the solicitor of the complainant filed another final decree in the first suit adjudging the amount due on the mortgage of the Chelsea National Bank to it, omitting the erroneous award of that amount to the defendant, the Gilbert T. Harris Corporation. And this second decree in the first case contained a clause directing that the first one be vacated. This subsequent decree in the first suit, like the prior one, recited the making of the master's report and the amounts found to be due by the master to the respective mortgages, the complainant and the Chelsea National Bank, decreed that the master's report be confirmed and that the mortgaged premises be sold, c., directing the issuance of an execution to the sheriff, c.
Now, it is perfectly obvious that there was no occasion for the entry of this second decree. There is no reason why the whole of the first decree should be vacated, and there is no reason why the master's report, which was confirmed by the first decree, and the adjudication that the mortgaged premises be sold to raise and pay the amount due upon the mortgages and that an execution should issue, c., should be adjudged over again. A simple order should be made amending the first decree by striking therefrom the adjudication that the mortgaged premises be sold to pay in the second place the sum due on the mortgage of the Chelsea National Bank to the Gilbert T. Harris Corporation, which was the owner of the equity of redemption, mortgagor. And such order will now be made, vacating the second decree, to the end that the first shall stand as amended.
To my knowledge it has been the practice of the court to require several mortgages to be foreclosed in one and the same suit where the parties, complainant and defendant, were the same; and, where the court found at any stage of the *Page 368 
proceedings that two bills had been filed when only one should have been, the suits have been consolidated. And irrespective of the doctrine of one bill to foreclose several mortgages where the parties are the same, it may be that such a bill would now lie where the parties are not the same, in virtue of rule 24 etseq., annexed to the Chancery act (1915), P.L. p. 184, now rule 23 et seq., chancery rules 1923, if the causes of action have a common question of law or fact, and arose out of the same transaction or series of transactions.
In Key West, c., Co. v. Porter, 63 Fla. 448, it was held that where a mortgagee holds two or more mortgages upon the same premises they should both be set out in the complaint and foreclosed in the same action, only one suit to foreclose both being brought.
Sams v. Derrick, 103 Ga. 678, was the foreclosure of four mortgages in one suit, and the defendant moved to dismiss the proceeding on the ground that the plaintiff was attempting to foreclose all in one. This, of course, was a mere motion to delay and fight off the day of payment, for, had it prevailed, it would have been an expensive victory to the defendant, as the complainant would have had to commence four suits against him in the place of one. The court held (at p. 679) that no right of the defendants could be injuriously affected by the plaintiff pursuing this course, but it was to their interest for him to bring one foreclosure proceeding, instead of harrassing them with four separate actions, thereby increasing court costs, and if they saw fit to litigate the matter, to the trouble and expense of defending four suits in place of one.
In Lowry v. Hensel, 281 Pa. 572, it was held that a chancellor has no authority to direct a trustee who holds a mortgage to segregate one piece of property and sell it, thereby causing the institution of a number of foreclosure proceedings, each with its own costs added.
In Pierce v. Balkam, 56 Mass. 374, it was held that the assignee of two mortgages of the same land made by the same mortgagor at different times to different mortgagees, may unite them in one action of foreclosure. And Chief-Justice *Page 369 
Shaw, in his opinion, at p. 376 (after speaking of power to enter certain judgments under the Massachusetts statute, with which we are not concerned), said, that it is obviously the policy of the law, and beneficial to all parties in saving expense, to avoid two suits between the same parties when one will afford a complete remedy.
The facts above expressed lead to the conclusion that these suits ought to be consolidated even at this point. In Burnham
v. Dalling, 16 N.J. Eq. 310, Chancellor Green held that it is within the power of a court of equity to consolidate actions with or without the consent of the complainants. And it may be done with or without the consent of the defendants as well. And (atp. 312) the chancellor said that the consolidation of causes seems to be a power over the conduct of suitors resting upon the clearest principles and absolutely essential to prevent scandalous abuse and to protect defendants against gross oppression, and says that in Cecil v. Brigges, 2 T.R. 639, where both of the causes of action might have been comprised in one, the order was made, with costs. And he refers to the decision of Chancellor Vroom in Conover v. Conover, Sax. 412, in which that chancellor recommended consolidation as a measure that would save costs and delay.
The object of consolidating two or more actions is, among other things, the attainment of justice with the least expense and vexation to the parties litigant. 1 C.J. 1119 § 303. And courts of general jurisdiction have, independently of statute, inherent power to consolidate different actions where the conditions authorizing consolidation exist. Ibid. 1122 § 310.
The rule applies in regard to suits in equity as well as to actions at law. Ibid. 1124 § 315.
Now, in the cases at bar these mortgages should have been consolidated into one bill in one foreclosure suit. As stated, two bills were filed and each cause has progressed to final decree. These decrees having been made and filed they will not now be disturbed, but the suits will be consolidated at this point and one execution shall issue for the sale of the mortgaged premises, all of which lie in the county of Atlantic. *Page 370 
Thus, the defendant who owns the equity of redemption will be saved the cost of double advertising. If that defendant had come in earlier and moved for a consolidation he would have obtained it very much as a matter of course, and thus have saved costs which the complainant has incurred in the prosecution of the two suits. This ruling is not to be regarded as a precedent for all cases, for, in many, where the proprieties clearly call for it, costs should be allowed in only one of a number of suits.
Order accordingly.